FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

FRANK SANTI,  :  The Hon. Joseph H. Rodriguez

       Plaintiff,  :  Civil Action No. 09-5011

  v.  :  **OPINION**

:

NATIONAL BUSINESS RECORDS
MANAGEMENT, LLC,  :

       Defendant.  :
_____

*Attorney for Plaintiff:*
James M. Duttera
Console Law Offices, LLC
1525 Locust Street
9th Floor
Philadelphia, PA 19102

*Attorney for Defendant:*
David M. Walsh
Jackson Lewis LLP
220 Headquarters Plaza
East Tower, 7th Floor
Morristown, NJ 07960

    **RODRIGUEZ**, Senior District Judge:

    Presently before the Court is Defendant's motion to transfer venue pursuant to 28 U.S.C. § 1404, or in the alternative to dismiss pursuant to the doctrine of forum non conveniens. [Dkt. Entry No. 6.] Defendant, National Business Records Management, LLC ("BRM"), seeks transfer of Plaintiff's employment discrimination claims from this Court to the United States District Court for the Western District of Pennsylvania. BRM

1

concurrently filed a motion to dismiss Counts II, III, IV, and VI of Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) [Dkt. Entry No. 7], but asked that this Court not consider that motion until it resolved the issue of forum. The Court heard oral argument on the motions on May 10, 2010. For the reasons expressed on the record that day, as well as those set forth below, Defendant's motion to transfer venue pursuant to 28 U.S.C. § 1404(a) [6] is GRANTED. Accordingly, the motion to dismiss pursuant to the doctrine of forum non conveniens [6] and the motion to dismiss under Fed.R.Civ.P 12(b)(6) [7] are not considered herein.

I. **BACKGROUND**

Plaintiff, Frank Santi ("Santi" or "Plaintiff") was employed by BRM for three days, at which point he alleges his employment was unlawfully terminated. Santi is a citizen of the state of New Jersey, and BRM is a Pennsylvania company with its principal place of business in Pittsburgh, Pennsylvania. On or about April 19, 2008, Santi completed an "on-line interview" for employment with Defendants on his home computer. (Amended Compl. at ¶ 19.) Santi subsequently spoke on the telephone with BRM's Chief Executive Officer, Christopher Neefus ("Neefus"), regarding the position of Executive Vice President. (Aff. of Pl., Frank Santi in Support of Pl.'s Opposition to Def.'s Motion to Transfer Venue at ¶ 4.) On or about May 12, 2008, Neefus, acting on behalf of Defendant, indicated that BRM would make Santi an offer of employment. (Amended Compl. at ¶ 20.) It was contemplated that Santi would work mainly from his home in New Jersey until Defendant opened an office in Philadelphia, Pennsylvania at which time Santi would work there. (Amended Compl. at ¶22.) Negotiations continued, but Santi ultimately accepted Defendant's offer of employment and began working on

2

Monday, June 16, 2008. (Amended Compl. at ¶ 21.)

Santi and Neefus met in person on two occasions prior to June 16, 2008, in order to discuss the terms of plaintiff's employment. Their first meeting took place in Conshohocken, Pennsylvania, near Neefus's home. Santi and Neefus met a second time at a diner in New Jersey near Santi's home. (Aff. of Pl., Frank Santi in Support of Pl.'s Opposition to Def.'s Motion to Transfer Venue at ¶ 5.)

On June 16, 2008, Santi traveled to Pittsburgh, Pennsylvania where he met with Neefus, Steven Wright, BRM's president, and Joe Gross, Defendant's sales manager. (Amended Compl. at ¶ 24.) During that meeting he was told that even though he was being hired as Executive Vice President, as part of his orientation he would have to do each job in the warehouse, which included climbing ladders and moving boxes. (Amended Compl. at ¶ 25.) Mr. Neefus asked Plaintiff if he would be able to do the physical activities despite his "bum knee," referring to a slight limp that occasionally affects Plaintiff's right knee. (Amended Compl. at ¶ 26.) At the mention of a knee problem, Mr. Wright accused Plaintiff of knowingly concealing a condition from them and taking the job only for health benefits. (Amended Compl. at ¶ 27.) He said words to the effect of Plaintiff wanting to have surgery on Defendant's benefits, which would cause premiums to go up. (Amended Compl. at ¶ 27.) Wright referred to Santi as a "workmen's comp [sic] case waiting to happen." (Amended Compl. at ¶ 27.)

Santi attempted to explain that he had no diagnosis of any problems in his knee, had no significant problems with the use of his knee, and had no intention of having his knee examined by a doctor as it was simply not a significant impediment. (Amended Compl. at ¶ 30.) Plaintiff pointed out that any problem with his knee did not interfere

3

with his active physical life, such as mountain biking. (Amended Compl. at ¶ 30.)
However, despite Santi's assurances, Neefus indicated that Santi's "bum knee"
concerned Defendant. (Amended Compl. at ¶ 32.) In that same conversation, Neefus
also advised Santi that Defendant was troubled by a prior lawsuit Santi brought in
December of 2007 against his former employer alleging age discrimination and
retaliation. (Amended Compl. at ¶¶ 18, 31.)

On June 18, 2008, Santi's third day of employment, he was called into a meeting
with Neefus and the Director of Finance and Human Resources, Linda Mottern.
(Amended Compl. at ¶ 32.) In that meeting Neefus notified Santi that he was being
terminated, effective immediately. He explained, "[b]etween the knee thing and the
[litigation] thing, I just don't have the trust level for you." (Amended Compl. at ¶ 32.)
Later in the meeting Neefus repeated his fear that Santi would sue the company if they
kept him on as an employee. (Amended Compl. at ¶ 32.) At this termination meeting,
Santi was presented with a release agreement, which he was told, he could have
reviewed by a lawyer. Neefus commented sarcastically that he knew Santi would.
(Amended Compl. at ¶ 33.)

On or about December 11, 2008, Plaintiff filed a Charge of Discrimination with
the Equal Employment Opportunity Commission ("EEOC") alleging BRM unlawfully
terminated his employment. (Amended Compl. at ¶ 15.) Santi cross-filed his claim with
the Pennsylvania Human Relations Commission. (Aff. of David M. Walsh, Pl.'s Election
Option to Dual File with the Pennsylvania Human Rights Commission, Ex. B.) The
EEOC subsequently issued Plaintiff a notice of dismissal and right to sue on or about
July 6, 2009. (Amended Compl. at ¶ 16.) On September 30, 2009, Santi then filed this

4

action in the Federal District Court for the District of New Jersey alleging he was terminated in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 (Amended Compl., Count I), the New Jersey Law Against Discrimination (NJLAD), N.J. Stat. Ann. § 10:5-1 (Amended Compl., Count II), the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 (Amended Compl., Count III), the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951 (Amended Compl., Count IV), Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 (Amended Compl., Count V), and Pennsylvania common law (Amended Compl., Count VI). Santi specifically alleges that Defendant retaliated against him because he had previously filed a lawsuit alleging violations of the ADEA and the NJLAD; that Defendant terminated him because it regarded him as having a disability in violation of the ADA and the PHRA; that Defendant terminated him with an intent to deprive him of benefits to which he otherwise would have been entitled in violation of Section 510 of ERISA; and that Defendant terminated him because he had filed a civil lawsuit and because it believed that he was likely to file a workers compensation claim in violation of the public policy of the Commonwealth of Pennsylvania.

First the Court must determine whether the case should be here, or whether it should be transferred to the Western District of Pennsylvania where the alleged discrimination giving rise to this cause of action took place and where Defendant is located.

## II. Discussion

Pursuant to Section 1404, a court may transfer a civil action to any other district where the case might have been brought if the transfer serves "the convenience of

parties and witnesses, [and is] in the interest of justice." 28 U.S.C. § 1404(a). The moving party bears the burden of establishing that the transfer is appropriate and must establish that the alternate forum is more convenient than the present forum. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). The Court has broad discretion in making determinations under Section 1404(a), and convenience and fairness are considered on a case-by-case basis. Commodity Futures Trading Comm'n v. Perkins, No. 06-4674, 2007 WL 2122029, at *3 (D.N.J. July 18, 2007).

Section 1404 requires a two-pronged analysis. The threshold inquiry is whether the proposed forum is one in which Plaintiff could have originally brought suit. In this case jurisdiction is predicated on the diversity of the parties under 28 U.S.C. § 1332. Where jurisdiction is based on diversity of citizenship, a civil action may be brought in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391. Venue would be proper in the Western District of Pennsylvania, as the Defendant transacts business there, Defendant's headquarters are located there, and at least part of the events giving rise to this cause of action occurred there.

Next, this Court must consider whether transfer would be in the interest of justice and for the convenience of the parties and witnesses. See 28 U.S.C. § 1404(a). In deciding motions to transfer venue, "courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses,

or interests of justice)." Jumara, 55 F.3d at 879. In addition, courts consider other relevant public and private interests:

> The private interest factors incorporate the preferences of the parties in the context of the litigation, and include (1) the choice of forum of the plaintiff; (2) the defendant's preference; (3) the ease of access to sources of proof; (4) the convenience of the witnesses-only to the extent that a witness may actually be unavailable for trial in one of the fora; and (4) where the claim arose. The second category analyzes the public interest including (1) practical considerations which could make the litigation easier and more expeditious, or inexpensive; (2) court congestion and administrative difficulties; (3) the local interest in resolving local controversies at home; and (4) the public policies of the fora.

Mendoza v. U. S. Custom & Border Protection, No. 05-6017, 2007 WL 842011, at *3 (D.N.J. March 19, 2007) (citing Jumara, 55 F.3d at 879) (internal citations omitted). Below the Court applies this analytical framework to the facts before it.

### A. Plaintiff's Choice of Forum

"Plaintiffs' choice of forum is a paramount consideration that should not lightly be disturbed." Clark v. Burger King Corp., 255 F.Supp.2d 334, 338 (D.N.J. 2003) (quoting Ayling v. Travelers Prop. Casualty Corp., No. 99-3243, 1999 WL 994403, at *2 (E.D.Pa. Oct. 28, 1999)). Unless the defendant can show that the inconvenience to the parties strongly favors its preference, plaintiff's choice of forum should prevail. Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970). However, courts give substantially less weight to a plaintiff's forum choice when the dispute at the heart of a lawsuit occurred almost entirely in another state. See e.g., NCR Credit Corp. v. Ye Seekers Horizon, Inc., 17 F.Supp.2d 317, 321 (D.N.J. 1998); Ricoh Co., Ltd. v. Honeywell, Inc., 817 F.Supp. 473, 481-82 (D.N.J. 1993).

Here, Santi filed his Complaint in New Jersey because he currently resides in

Sewell, New Jersey. (Amended Compl. at ¶ 1.) However, the action is based on operative facts that bear little connection to New Jersey. Santi was employed in Pennsylvania (granted, only for three days), he reported to supervisors located in Pennsylvania, and was terminated in Pennsylvania. No acts related to the alleged discrimination occurred in New Jersey. Thus, although it is entitled to deference, the weight of plaintiff's forum preference is reduced because New Jersey has few significant contacts with the underlying cause of action.

### B. Where the Claim Arose

All claims at issue arose out of Defendant's decision to terminate Santi in light of information obtained during orientation meetings that took place in Pittsburgh, Pennsylvania. The decision to terminate Plaintiff was made by management in Pittsburgh, and almost all personnel involved in the alleged discriminatory termination are based in Defendant's office in Pittsburgh. Plaintiff vehemently argues that New Jersey, the location where his employment would have taken place if he had not been fired, is the location relevant to the court's inquiry. However, Plaintiff provides no support for that contention. Plaintiff suggests that if the critical location is defined as the place where the employer communicates its decision to terminate the employee, then a company could summon an employee to an inconvenient distant forum to fire the employee in order to prevent any attempt to challenge the decision. However, that is not what happened in this case.

The events giving rise to this claim occurred in Pittsburgh. Santi was there in order to finalize all terms of his employment and for training and orientation purposes. The fact that the employer hired Santi to work initially from his home in New Jersey is

8

not relevant to the discrimination that allegedly occurred during the hiring process in Pittsburgh. Plans of interim employment in New Jersey are not sufficient to satisfy the plaintiff's burden under this prong of the analysis. Accordingly, this factor weighs in favor of the Defendant.

### C. Convenience of the Parties and Witnesses

In considering the "convenience of the parties" district courts should focus on the relative physical and financial condition of the parties. See Jumara, 55 F.3d at 879. Santi argues that he has been out of work for three years and litigating in Pittsburgh would be a great hardship on him. On the other hand, he argues that the Defendant is a profitable corporation that has the resources to defend in New Jersey. The fact that Defendant has substantially more resources than Plaintiffs should not be the sole reason for refusing a transfer, see Nat'l Mortgage Network, Inc. v. Home Equity Ctrs., Inc., 683 F.Supp. 116, 119 (E.D.Pa. 1988), but the Court acknowledges that litigating in a distant forum would weigh more heavily on Plaintiff. The relative inconvenience to the parties weighs in Santi's favor.

In assessing the private interests of the parties, the convenience of potential witnesses also must be balanced. In re Consolidated Parlodel Litig., 22 F. Supp.2d 320, 323 (D.N.J. 1998). Both parties argue that transporting their witnesses to the other forum will be inconvenient. Defendant's headquarters are in Pittsburgh and almost all of its potential witnesses are located there. (See Decl. of Linda Mottern.) Plaintiff, on the other hand, intends to call his spouse, who lives in New Jersey, the recruiter who brought him to Defendant, who is located in New York City, and most likely an expert witness located in New Jersey who will provide an economic loss assessment. However,

9

none of the parties have asserted that any witness would be unavailable in either forum and it appears that the inconvenience to the parties and witnesses involved is relatively even. Convenience of the witnesses is a neutral factor that will not impact the Court's decision.

### D. Location of the Relevant Documents

The "relative ease of access to sources of proof" is another private interest district courts may consider when evaluating a motion to transfer. See Clark, 255 F. Supp.2d at 339. It is not clear to the Court how great of a burden it would be to move the necessary documents to New Jersey. "[W]hen documents can be transported and/or easily photocopied, their location is entitled to little weight." Id. Plaintiff's employment records are located in Pittsburgh. It is unclear what documents might be needed at trial; therefore, the location of relevant documents will not impact the analysis of whether to transfer this litigation to Western District of Pennsylvania. However, this factor weighs slightly in favor of transfer.

### E. Public Factors

Next the Court turns to the public interests at stake: (1) practical considerations which could make the litigation easier and more expeditious, or inexpensive; (2) court congestion and administrative difficulties; (3) the local interest in resolving local controversies at home; and (4) the public policies of the fora. There is no evidence that either court poses administrative difficulties or serious practical considerations. However, there is a question as to whether New Jersey has an interest in this case. New Jersey courts apply the law of the state where the employee *works* to claims of employment discrimination. See Buccilli v. Timby, Brown & Timby, 283 N.J. Super. 6,

660 A.2d 1261, 1264 (App.Div. 1995). As Santi arguably never commenced employment in New Jersey, he does not fall within the scope of the New Jersey Law Against Discrimination and there is no, "local interest in resolving local controversy at home" argument weighing in Santi's favor. Accordingly, that public factor favors transfer.

### III. CONCLUSION

After considering all of the <u>Jumara</u> factors, the Court finds that transfer is warranted. While the burden on Santi of prosecuting the case in Pennsylvania outweighs the burden to BRM of defending the case in New Jersey, all of the operative facts giving rise to plaintiff's cause of action were committed in Pennsylvania, the relevant records and documents are located in Pennsylvania, and it is Pennsylvania law and policy that are relevant to this case. Defendant has overcome the presumption in favor of Santi's choice of forum and made the requisite clear and convincing showing that transfer of this action will serve the convenience of the parties and the interests of justice.

For these reasons, as well as those expressed on the record during oral argument, the Defendants' motion to transfer venue to the Western District of Pennsylvania [Dkt. Entry No. 6.] is granted. An appropriate Order shall follow.

Dated: July 7, 2010 /s/ Joseph H. Rodriguez_____
HON. JOSEPH H. RODRIGUEZ,
United States District Judge