IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Frank Santi, )
)
    Plaintiff, )
)
vs. )
) Civil Action No. 10-904
Business Records Management, LLC, )
)
)
    Defendant. )
)

AMBROSE, District Judge

# OPINION
## and
## ORDER OF COURT

This is an employment discrimination action arising out of the termination of Plaintiff's employment with Defendant Business Records Management, LLC ("BRM") on June 18, 2008. Pending before the court is Defendant's Motion to Dismiss Counts II, III, IV, and VI of Plaintiff's Amended Complaint. (Docket No. 7). Plaintiff opposes the motion to dismiss. (Docket No. 18). After careful consideration, Defendant's motion to dismiss is granted in part and denied in part as more fully set forth below.

## OPINION

### I. Background[1]

**A.**     **Factual Background**

Plaintiff, Frank Santi ("Santi" or "Plaintiff") was employed by BRM for three days, at which point he alleges his employment was unlawfully terminated. Santi is a citizen of the State

---

1     Unless otherwise noted, the facts in this section are taken from Plaintiff's Amended Complaint (Docket No. 2).

of New Jersey, and BRM is a Pennsylvania company with its principal place of business in Pittsburgh, Pennsylvania.

On or about April 19, 2008, Santi completed an "on-line interview" on his home computer for employment with BRM. Santi subsequently spoke on the telephone and in person with BRM's Chief Executive Officer, Christopher Neefus ("Neefus"), regarding the position. On or about May 12, 2008, Neefus indicated to Santi that BRM intended to make him an offer of employment. After negotiations, Santi ultimately accepted BRM's offer of employment in the position of Executive Vice President and began working for BRM on June 16, 2008. It was contemplated that Santi would work mainly out of his home in New Jersey until BRM opened an office in the Philadelphia area. On June 16, 2008, however, Santi was to report to BRM's Pittsburgh headquarters for training and orientation.

When Santi arrived in Pittsburgh on June 16, 2008, he met with Neefus, BRM's President Steven Wright ("Wright"), and Sales Manager Joe Gross. During that meeting, he was told that even though he was being hired as Executive Vice President, as part of his orientation he would have to do each job in the warehouse, including climbing ladders and moving boxes. Neefus asked Santi if he would be able to do the physical activities despite his "bum knee," referring to a slight limp that occasionally affects Santi's right knee. At the mention of a knee problem, Wright became very upset and accused Santi of knowingly concealing a condition from them and taking the job with BRM only for health benefits. Wright said words to the effect of Santi wanting to have surgery on BRM's benefits, which would cause BRM's premiums to go up. Wright also referred to Santi as a "workmen's comp case waiting to happen."

Santi attempted to explain that he had no diagnosis of any problems in his knee, had no significant problems with the use of his knee, and had no intention of having his knee examined

by a doctor as it was simply not a significant impediment. Santi pointed out that any problem with his knee did not interfere with his active physical life, such as mountain biking.

On Santi's second day of employment, the subject of Santi's then-ongoing litigation with his former employer came up during a conversation with Neefus. Neefus stated words to the effect of "Between the knee and the [litigation], are you going to sue me now?" That afternoon, Neefus again negatively referenced Santi's knee and litigation, implying that it could affect Santi's continued employment with BRM. On June 18, 2008, Santi's third day of employment, Santi was called into a meeting with Neefus and BRM's Director of Finance and Human Resources, Linda Mottern. In that meeting, Neefus notified Santi that his employment was being terminated, effective immediately. Neefus stated that "[b]etween the knee thing and the [litigation] thing, I just don't have the trust level for you," and repeated his fear that Santi would sue the company if they kept him as an employee. At the termination meeting, Santi was presented with a release agreement. Neefus said that Santi could have the agreement reviewed by an attorney and then added sarcastically, "which I know you will."

## B. Procedural History

On or about December 11, 2008, Santi filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging BRM unlawfully terminated his employment. Santi requested that his claim be cross-filed with the Pennsylvania Human Relations Commission ("PHRC"). The EEOC issued Santi a notice of dismissal and right to sue on or about July 6, 2009. On September 30, 2009, Santi filed the instant action in the United States District Court for the District of New Jersey. (Docket No. 1). On October 13, 2009, Santi filed an Amended Complaint alleging his employment was terminated in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 (Count I), the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1 (Count II), the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12101 (Count III), the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. § 951 (Count IV), the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 (Count V), and Pennsylvania common law (Count VI). (Docket No. 2). Specifically, Santi alleges that BRM retaliated against him because he previously had filed a lawsuit alleging violations of the ADEA and the NJLAD; that BRM terminated his employment because it regarded him as having a disability in violation of the NJLAD, ADA, and PHRA; that BRM terminated his employment with an intent to deprive him of benefits to which he otherwise would have been entitled in violation of Section 510 of ERISA; and that BRM terminated his employment in violation of the public policy of the Commonwealth of Pennsylvania because he had filed a civil lawsuit and because BRM believed that Santi was likely to file a workers' compensation claim. Id.

On December 4, 2009, BRM filed an Answer to Santi's Amended Complaint (Docket No. 4); a Motion to Transfer Case to the United States District Court for the Western District of Pennsylvania (Docket No. 6); and the instant Motion to Dismiss Counts II, III, IV, and VI of the Amended Complaint (Docket No. 7). Santi opposed both motions. (Docket No. 14, 18). On July 7, 2010, Senior District Judge Joseph H. Rodriguez of the United States District Court for the District of New Jersey granted BRM's motion to transfer and transferred the case to this Court. (Docket Nos. 23-24). Judge Rodriguez did not rule upon BRM's motion to dismiss. Briefing on the motion to dismiss is complete (Docket Nos. 7, 10, 18, 19), and the motion is now ripe for my review.

## II. Legal Analysis

### A. Legal Standard

Defendant filed its Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. When deciding whether to grant or deny a 12(b)(6) motion the Supreme Court has held:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atlantic Co. v. Twombly, 550 U.S. 544, 555 (2007) (citations and footnote omitted); see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (a plaintiff's factual allegations must be enough to raise a right to relief above the speculative level).

Most recently, in Ashcroft v. Iqbal, ___ U.S.___, 129 S. Ct. 1937 (2009), the Supreme Court held, ". . . a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citations omitted).

In Iqbal, the Court specifically highlighted the two principles which formed the basis of the Twombly decision: First, for the purposes of a motion to dismiss, courts must accept as true all factual allegations set forth in the complaint, but courts are not bound to accept as true any legal conclusions couched as factual allegations. Id. at 1949-50; see also Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009). Second, a complaint will survive a motion to dismiss only if it states a plausible claim for relief, which requires a court to engage in a context-specific task, drawing on the court's judicial experience and common sense. Iqbal, 129 S. Ct. at 1950;

Fowler, 578 F.3d at 210-11.  Where well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not shown – the complainant is entitled to relief.  Iqbal, 129 S. Ct. at 1950 (citing Fed. R. Civ. P. 8(a)(2)).

   **B. Motion to Dismiss**

BRM moves to dismiss four counts of Santi's Amended Complaint:  Count II (retaliation and disability discrimination under the NJLAD); Count III (disability discrimination under the ADA); Count IV (disability discrimination under the PHRA); and Count VI (wrongful termination in violation of Pennsylvania common law).  BRM does not seek dismissal of Count I (retaliation under the ADEA) or Count V (violation of ERISA) of the Amended Complaint at this juncture.  After careful consideration and for the reasons set forth below, BRM's motion is granted in part and denied in part.

   **1. NJLAD**

In Count II of the Amended Complaint, Santi alleges that BRM violated the NJLAD by discriminating against him on the basis of a "regarded as" disability and by terminating his employment in retaliation for his filing an NJLAD claim against his former employer.  Am. Compl. ¶¶ 48-53.  BRM moves to dismiss this count on the grounds that the NJLAD does not apply to individuals such as Santi who do not work in New Jersey.  Santi disagrees and responds that (1) the NJLAD applies to his discrimination claim because he was hired to work out of his home in New Jersey until BRM opened an office in the Philadelphia area; and (2) that the NJLAD applies to his retaliation claim because BRM retaliated against him for filing an NJLAD complaint against his previous employer.

After careful consideration, I agree with BRM that Santi has failed to state a claim under the NJLAD.  As BRM correctly notes, "New Jersey courts have consistently applied the law of the *state of employment* to claims of workplace discrimination, and therefore only apply the

NJLAD if the claimant was employed in New Jersey." Peikin v. Kimmel & Silverman, P.C., 576 F. Supp. 2d 654, 657 (D.N.J. 2008) (citing Weinberg v. Interep Corp., No. 05-5458, 2006 WL 1096908, at *6 (D.N.J. Apr. 26, 2006)); see also Kelman v. Foot Locker, No. 05-2069, 2006 WL 3333506, at *6 (D.N.J. Nov. 16, 2006) (NJLAD did not apply to lawsuit for actions New Jersey resident incurred while working in New York for a New York corporation); Satz v. Taipina, No. 01-5921, 2003 WL 22207205, at *16 (D.N.J. Apr. 15, 2003), aff'd, 122 F. App'x 598 (3d Cir. 2005); Buccilli v. Timby, Brown & Timby, 660 A.2d 1261, 1263-64 (N.J. Super. Ct. 1995) ("[T]he damage claim of a New Jersey resident for her allegedly wrongful dismissal from out-of-state employment is governed by the law of the state in which she was employed.").

Here, although Santi may have contemplated working for a period out of his home in New Jersey, his employment never reached that point. Rather, it is clear from the Amended Complaint that Santi only worked for BRM for three days and only worked during those days in Pittsburgh, Pennsylvania. See Am. Compl. ¶¶ 23-24, 31-32. The decision to terminate Santi's employment also was made in Pittsburgh. See id. ¶ 32. Indeed, in considering this issue in connection with granting BRM's motion to transfer venue in this case, Judge Rodriguez ruled that the NJLAD does not apply. See Docket No. 23 at 11 ("As Santi arguably never commenced employment in New Jersey, he does not fall within the scope of the [NJLAD] . . . ."). For all of these reasons, the NJLAD does not apply to Santi's claims, and BRM's motion to dismiss Santi's NJLAD claim is granted.[1]

---

[1] Although Santi contends that the NJLAD nevertheless applies to his retaliation claim (as opposed to his disability discrimination claim) because BRM retaliated against him for filing an NJLAD complaint against his previous employer, Santi does not sufficiently analyze this argument or cite to any case law supporting it.
BRM further contends in a supplemental brief that I should dismiss the NJLAD claim for lack of jurisdiction because BRM has insufficient contacts with New Jersey to support such a claim. Docket No. 10 at 1. Although Santi fails to address this argument in his opposition brief, it is not necessary to address it in light of my ruling above.

### 2. ADA

In Count III of the Amended Complaint, Santi alleges that BRM violated the ADA by terminating his employment because it regarded him as having a disability. Am. Compl. ¶¶ 54-58. BRM moves to dismiss Santi's ADA claim on the grounds that Santi has failed to state an actionable claim that he was "regarded as" disabled. Specifically, BRM argues that the Amended Complaint fails to identify a specific perceived disability or the specific major life activity that BRM allegedly regarded him as being substantially limited in performing and that even taken as true, the allegations in the Amended Complaint do not support a conclusion that BRM regarded Santi as substantially limited in any such activity. See Docket No. 7-1 at 6-8; Docket No. 19 at 8-11. I disagree.

Under the ADA, an "individual with a disability" is any person who:

(i) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(ii) has a record of such an impairment; or

(iii) is regarded as having such an impairment.

42 U.S.C. § 12102(1). Santi proceeds solely under the "regarded as" prong of this definition in his Amended Complaint. To prevail under a "regarded as" theory, Plaintiff must demonstrate either that (1) despite having no impairment at all, his employer erroneously believes he has an impairment that substantially limits a major life activity or (2) he has a nonlimiting impairment that the employer mistakenly believes substantially limits a major life activity. Tice v. Centre Area Transp. Auth., 247 F.3d 506, 514 (3d Cir. 2001).

Taking the allegations in the Amended Complaint as true, Santi has sufficiently shown that BRM "regarded him as" having a physical impairment – a "bum knee." Am. Compl. ¶¶ 26-27, 31-32. The Amended Complaint further shows that BRM mistakenly believed that Santi's alleged knee condition substantially limited a major life activity. Although, as BRM notes, the

Amended Complaint does not specifically identify the major life activity at issue, the rules do not require a plaintiff "to go into particulars about the life activity affected by h[is] alleged disability or detail the nature of h[is] substantial limitations." Slade v. Hershey Co., Civ. A. No. 1:09-cv-541, 2009 WL 4794067, at *4 (M.D. Pa. Dec. 8, 2009) (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009)). Viewing the Amended Complaint and all related inferences in the light most favorable to Santi, it is plausible that BRM regarded him as substantially limited at least in the major life activities of working, walking and/or lifting. Among other things, the pleading avers that on Santi's first day of employment, CEO Neefus asked him if he could do the physical activities required during orientation (e.g., climbing ladders and moving boxes) with his "bum knee." Am. Compl. ¶ 26. The Amended Complaint further asserts that President Wright became very upset about the mention of a "bum knee" and accused Santi of knowingly concealing a "condition" from them and taking the BRM job only for health benefits. Id. ¶ 25. Although Santi attempted to explain to Wright and the others that he had no significant problems with the use of his knee, Neefus again negatively referenced the knee and implied it could affect Santi's continued employment with BRM. Id. ¶ 31. On Santi's third day of work – only *two* days after he first asked about Santi's "bum knee" – Neefus terminated Santi's employment, stating words to the effect of "I have given this a lot of thought. Between the knee thing and the [litigation] thing, I just don't have the trust level for you. Are you going to sue me down the road?" Id. ¶ 32.

I find that these allegations, taken as true and viewed in the light most favorable to Santi, show either (1) that BRM erroneously believed Santi had a knee impairment that substantially limited a major life activity, or (2) Santi had a nonlimiting knee impairment that BRM mistakenly believed substantially limited a major life activity, and that BRM terminated Santi's employment

9

because of that erroneous belief. Because Santi has stated a plausible claim of "regarded as" disability discrimination under the ADA, BRM's motion to dismiss Santi's ADA claim is denied.

### 3. PHRA

Similar to Count III, Count IV of the Amended Complaint alleges that BRM violated the PHRA by terminating his employment because it regarded him as having a disability. Am. Compl. ¶¶ 59-62. BRM first moves to dismiss Santi's PHRA claim on the same grounds it raised in opposition to Santi's ADA claim – *i.e.*, that Santi has failed to state a plausible claim that BRM regarded him as substantially limited in any major life activity. Docket No. 7-1 at 5-8. For the reasons set forth above, BRM's argument in this regard is unpersuasive.

Second, BRM argues that the PHRA claim must be dismissed because Santi filed his federal lawsuit less than a year after filing his claim with the PHRC and, therefore, failed to exhaust his state administrative remedies. Docket No. 10 at 2-6. I agree. As the Pennsylvania Supreme Court has held, the PHRA requires that in order to file a lawsuit alleging a PHRA violation, a plaintiff must first file an administrative complaint with the PHRC. See Clay v. Advanced Computer Applications, Inc., 559 A.2d 917, 920 (Pa. 1988) (citing 43 Pa. Stat. § 962). Once an administrative complaint is filed, the PHRC retains exclusive jurisdiction over the action for one year for purposes of investigation and conciliation. See id. (citing 43 Pa. Stat. § 962(c)). A party may only pursue his PHRA claim in the courts if, within one year of the filing of an administrative complaint, the PHRC dismisses the complaint or fails to enter a conciliation agreement to which the complainant is a party. See id.

Santi does not respond to BRM's argument or otherwise deny that he failed to exhaust his administrative remedies with respect to his PHRA claim. In addition, although the Amended Complaint contains several averments regarding the filing and disposition of Santi's EEOC charge (see Am. Compl. ¶¶ 15-16), it is devoid of any allegations concerning his attempts to

exhaust his administrative remedies under the PHRA. At best, the Amended Complaint suggests that Santi requested that his December 2008 EEOC charge be cross-filed with the PHRC. See Am. Compl. Ex. 1. That conclusion, however, only supports BRM's argument that Santi did not comply with the one year exclusive jurisdiction period before filing his PHRA claim in federal court and, thus, failed to exhaust his administrative remedies.

I disagree with BRM, however, that Santi's PHRA claim should be dismissed with prejudice. Rather, I agree with those courts within this Circuit that, when confronted with this issue, have permitted the plaintiff to amend his complaint in accordance with the one year rule once the administrative requirements have been met. See, e.g., McGovern v. Jack D's, Inc., No. Civ. A. 03-5547, 2004 WL 228667, at *8 (E.D. Pa. Feb. 3, 2004) (granting plaintiff leave to amend complaint after one year period had elapsed); Reilly v. Upper Darby Twp., Civ. A. No. 2:09-02465-WY, 2010 WL 55296, at **3-4 (E.D. Pa. Jan. 6, 2010); Schaefer v. Independence Blue Cross, Inc., No. Civ. A. 03-CV-5897, 2005 WL 181896 (E.D. Pa. Jan. 26, 2005); Pergine v. Penmark Mgmt. Co., 314 F. Supp. 2d 486, 489-90 (E.D. Pa. 2004); Kozlowski v. Extendicare Health Servs., Inc., No. 99-4338, 2000 WL 193502, at *4 (E.D. Pa. Feb. 17, 2000); see also Violanti v. Emery Worldwide A-CF Co., 847 F. Supp. 1251, 1258 (M.D. Pa. 1994) (premature filing of federal complaint stating PHRA claim was correctable by the passage of time). Because I find that Santi otherwise states a valid PHRA claim, I grant BRM's motion to dismiss the claim for failure to exhaust administrative remedies, without prejudice to Santi's ability to amend his complaint to reinstate his PHRA claim following the completion of the administrative process.

### 4. Wrongful Termination

Count VI of Santi's Amended Complaint alleges that BRM violated Pennsylvania public policy by terminating Santi's employment because it feared Santi would file a workers'

compensation claim. Am. Compl. ¶¶ 67-71. BRM moves to dismiss this count on the grounds that although Pennsylvania law recognizes a claim for wrongful discharge of an employee who has filed a workers' compensation claim, it does not recognize a common law wrongful discharge claim based on firing due to fears of a *potential future* workers' compensation claim. Docket No. 7-1 at 8-12; Docket No. 19 at 11-12. Santi notes in response that the Pennsylvania Supreme Court has recognized that the Pennsylvania Workers Compensation Act represents a significant public policy and that employment termination in response to a workers' compensation claim would support a claim for wrongful discharge. Docket No. 18 at 10. Santi urges that this reasoning should extend to "potential future" workers compensation claims as well. Id. After careful consideration, I agree with BRM that Santi's theory does not support a cause of action for wrongful discharge in this case.

In Pennsylvania, an employer generally may discharge an at-will employee such as Santi "with or without cause, at pleasure." Shick v. Shirey, 716 A.2d 1231, 1233 (Pa. 1998); see also Geary v. U.S. Steel Corp., 319 A.2d 174, 176 (Pa. 1974) ("Absent a statutory or contractual provision to the contrary, the law has taken for granted the power of either party to terminate an employment relationship for any or no reason."); Krajsa v. Keypunch, Inc., 622 A.2d 355, 358 (Pa. Super. Ct. 1993) ("[A]n at-will employee may be terminated for good reason, bad reason, or no reason at all."). This "privilege to dismiss an employee with or without cause is not absolute, however, and may be qualified by the dictates of public policy." Shick, 716 A.2d at 1233. Pennsylvania courts have recognized such public policy exceptions rarely and only where a clear mandate of public policy has been violated. See, e.g., id. at 1234 & n.3; Geary, 319 A.2d at 180.

In Shick, the Pennsylvania Supreme Court recognized a narrow public policy exception to the "at-will" employment doctrine for actions by employees who are discharged in retaliation

for exercising their statutory right to file a claim for workers compensation benefits. 716 A.2d at 1238. Santi has not cited any authority, however, suggesting that Pennsylvania courts have extended, or would extend, this exception to cases such as his in which an employee has not exercised any rights under the act. Indeed, courts applying Pennsylvania law have refused to recognize similar expanded causes of action. See, e.g., Murray v. Gencorp, Inc., 979 F. Supp. 1045 (E.D. Pa. 1997) (holding that Pennsylvania courts would not recognize a public policy wrongful discharge claim based on a firing due to the employer's fear that the plaintiff might get injured and file a workers' compensation claim in the future); see also Alderfer v. Nibco, Inc., No Civ. A. 98-6654, 1999 WL 956375 (E.D. Pa. Oct. 19, 1999) (employee who did not exercise any of her rights under the Workers Compensation Act prior to discharge could not recover under Shick).

Here, as in Murray, Santi's Amended Complaint nowhere suggests that Santi was injured on the job, had filed or intended to file a claim for workers' compensation benefits, or had otherwise exercised any of his rights under the Workers' Compensation Act.[2] Rather, Santi avers solely that BRM terminated his employment "for fear" that he would file a workers' compensation claim. In light of the extreme narrowness of the public policy exception to at-will

---

[2] Santi's argument that Murray is no longer good law because it predates Shick is without merit. See Docket No. 18 at 10-11. Although the Murray court acknowledged that the Superior Court in Shick refused to recognize a cause of action for discharge in retaliation for filing a workers' compensation claim, it did not, as Santi erroneously suggests, rely on that opinion as a basis for its holding. To the contrary, the Murray court noted that there were conflicting opinions within the Pennsylvania courts but that it did not need to reach the issue because *even if* the Pennsylvania Supreme Court were to recognize a cause of action to protect employees who were fired in retaliation for filing a workers' compensation claim, such a cause of action would not extend to employees who had not exercised their rights under the WCA but whom the employer feared *may* be injured and *then* file a claim. Murray, 979 F. Supp. at 1049-50.

Santi's reliance on Rothrock v. Rothrock Motor Sales, Inc., 883 A.2d 511 (Pa. 2005) is likewise misplaced. In Rothrock, the Pennsylvania Supreme Court extended Shick to apply to a supervisory employee who was fired for refusing to dissuade an injured subordinate from seeking workers' compensation benefits. Nothing in Rothrock, however, suggests that Schick must somehow also apply to a lawsuit that does not involve an employee injured on the job or otherwise implicate an employee's workers' compensation rights. To the extent Santi suggests an employer cannot preemptively fire an injured employee who intends to file a workers' compensation claim, I do not need to reach this issue because those are not the facts set forth in the Amended Complaint.

employment in Pennsylvania, and in the absence of persuasive authority supporting Santi's position, I decline to extend the Shick workers' compensation exception to employment at-will to cases such as this where an employer simply fears an employee might file a workers' compensation claim in the future. Accordingly, Santi has failed to state a claim for wrongful discharge in violation of public policy and BRM's motion to dismiss the wrongful discharge claim is granted.[3]

### III. CONCLUSION

For all of the reasons set forth above, BRM's motion to dismiss Counts II (NJLAD) and VI (wrongful discharge) of Santi's Amended Complaint is granted. BRM's motion to dismiss Count IV (PHRA) of the Amended Complaint is granted without prejudice as set forth more fully above. BRM's motion to dismiss is denied in all other respects.

---

[3] In light of this ruling, it is unnecessary to address BRM's alternative argument that the PHRA preempts Santi's wrongful discharge claim. See Docket No. 7-1, at 12.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Frank Santi, <br><br> Plaintiff, <br><br> vs. <br><br> National Business Records Management, LLC, <br><br> Defendant. | Civil Action No. 10-904 |

AMBROSE, District Judge

## **ORDER OF COURT**

AND NOW, this 9th day of August, 2010, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that Defendant National Business Records Management, LLC's Motion to Dismiss (Docket No. 7) is granted in part and denied in part as follows. Defendant's motion to dismiss Counts II (NJLAD) and VI (wrongful discharge) of the Amended Complaint is granted. Defendant's motion to dismiss Count IV (PHRA) of the Amended Complaint is granted without prejudice as set forth more fully in the Opinion accompanying this Order. The motion to dismiss is denied in all other respects.

The Status Conference set for August 11, 2010, at 10:45 a.m. shall take place as scheduled.

BY THE COURT:

/s/ Donetta W. Ambrose
Donetta W. Ambrose
U.S. District Judge